JONES, Justice.
This is an appeal from a final judgment entered pursuant to Rule 54(b), A.R.Civ.P., in favor of defendant Robert G. Cleveland. We affirm.
The plaintiff, Business Investment Group of Alabama, Inc. (“Business Investment”), entered into a franchise agreement with Cleveland on December 7, 1984. On January 2, 1985, John Helmstadter, president of Business Investment, gave written approval to Cleveland to “sell, transfer, assign and set over to Riverchase Business Brokers, Inc., Assignee, all of Assignor’s rights, title, and interest in, to and under that certain unit franchise agreement, dated December 7, 1984, wherein Business Investment Group of Alabama, Inc., is the Franchisor.” Subsequent thereto, Cleveland assigned all of his interest in the franchise agreement to Riverchase Business Brokers, Inc. (“Riverchase”). Cleveland was an officer and employee of Riverchase and derived income therefrom. In March 1987, Riverchase’s assets were sold to Tel-A-Cover Systems, Inc.[1]
On April 17, 1987, Business Investment sued Cleveland and Riverchase for breach of contract based on a “non-compete” provision in the franchise agreement it had entered into with Cleveland. Cleveland and Riverchase filed answers of general denial, counterclaimed for breach of contract, and asserted affirmative defenses of 1) prior material breach by Business Investment, and 2) no liability on the part of Cleveland, claiming that Cleveland was no longer a party to the contract because he had assigned the contract and all of his interest therein to Riverchase with Business Investment’s written consent.[2]
Because the trial court’s judgment concisely states the issues, and because it addresses these issues in keeping with the respective contentions of the parties, we set forth pertinent parts of that judgment:
“The claim of [Business Investment] is based upon an alleged violation of Article 9 — Covenant Not To Compete. This Article appears on page 7 of the Franchise Agreement which is Exhibit C to [Cleveland’s] motion for summary judgment.
“CONTENTIONS OF [BUSINESS INVESTMENT]
“[Business Investment] contends that Cleveland is liable to it in damages for breach of the covenant not to compete.[3] [Business Investment] alleges that this provision of the Agreement survived the assignment of the Franchise Agreement to [Riverchase]. The covenant has time and distance provisions which [Business Investment] claims have been violated by Cleveland with resultant damage to [Business Investment].
“CONTENTIONS OF [CLEVELAND]
“Cleveland contends that he has not breached any article of the Franchise Agreement and, more particularly, that he has not breached Article 9 thereof. Cleveland contends that Article 9 has no *1023 application whatsoever to his assignment of his interest in the Franchise Agreement to Riverchase. He contends that his actions are governed by Article 20— Assignability of the Franchise Agreement.
“Cleveland contends that Article 9 would only apply to a situation where the Franchise Agreement is terminated.
‘ ‘Article 20 — Assignability—requires that the franchisee obtain the written consent of the franchisor and also comply with six conditions under this Article. The approval letter by [Business Investment] is an exhibit to [Cleveland’s] motion.
“DISCUSSION
“A number of the articles in the Franchise Agreement must be considered in arriving at the answer to the problem. It must be considered if these articles are vague, uncertain, or indefinite on the one hand or clear and unambiguous on the other. Consideration must be given to the fact that [Business Investment] prepared the Franchise Agreement.
“Article 18 — Severability—appears on page 9 [of the Franchise Agreement]. This Article reads as follows:
“ ‘All of the Articles of this Agreement are distinct and severable, and if any Article shall be held illegal or void, it shall not affect the validity or legality of the remaining portion of this Agreement.’
“Article 9 — Covenant Not To Compete — appears on page 7 [of the Franchise Agreement]. Portions of this Article read as follows:
“ ‘This Article shall survive termination of this Agreement- In consideration thereof, and in the event of termination of this Agreement,.... ’
“Thus, it can be seen that the Agreement seeks to define termination and the responsibilities of the parties. However, Article 9 — Covenant Not To Compete— only provides that the Article would survive termination. [Business Investment] could have included in Article 20 — As-signability — a provision that assignability is a form of and is to be considered termination. This it failed to do.
“At this point in the discussion, two other Articles should be considered more fully.
“Article 20 — Assignability—appears on page 10 [of the Franchise Agreement]. It reads, in part:
“ ‘In order to sell, transfer, or otherwise assign this Agreement, or to relocate the franchised office, the franchisee must obtain the prior written consent of [Business Investment].’
“In addition, this Article requires six other conditions to be satisfied in order to meet the approval of the Franchisor.
“Mr. John Helmstadter, President of [Business Investment], testified that the assignment was in all respects valid and in order.
“Article 15 — Right Of First Refusal— appears on page 9 [of the Franchise Agreement].
“This Article deals with the situation in which the Franchisee wishes to sell its interest. In that event, the Franchisee must give to the Franchisor the first right to purchase on the same terms and conditions as are extended to the prospective purchaser.
“Article 15 and Article 18 give [Business Investment] the right not only to approve the assignment of the franchise, but also the right to purchase the franchise on the same terms and conditions.
“Although [Business Investment] was on notice of Cleveland’s desire to assign the franchise and also that it knew it could either approve the assignment or exercise the right to purchase [the franchise], it approved the assignment to [Riverchase].
“CONCLUSIONS
“The court finds and concludes that the terms of the Franchise Agreement are clear and unambiguous and should be given effect as to their ordinary meaning and usage.
“The court finds and concludes that the assignment of his interest by Cleve *1024 land to Riverchase Business Brokers, Inc., was done in full compliance with, and as provided [for] in the terms and conditions set forth in, the Franchise Agreement. Said assignment met all of the requirements of Article 20 with particular reference to written consent by [Business Investment].
“The court finds and concludes that Article 9 is not applicable to the assignment under consideration and, therefore, that Cleveland is not in violation of any terms and conditions of the Franchise Agreement.
“Therefore, IT IS CONSIDERED that the motion for summary judgment by the defendant, Robert G. Cleveland, is well taken and is hereby granted. There being no just reason for delay, final judgment is hereby entered in favor of the defendant, Robert G. Cleveland, as per A.R.Civ.P., Rule 54(b). Costs, if any, relative to this defendant are hereby taxed to [Business Investment].
“DONE AND ORDERED this the 21st day of February, 1990.
“/s/ Claude Hughes “Claude Hughes, Judge”
After careful study of the briefs and the judgment appealed from, we find no basis for reversal. Thus, we adopt the opinion of the trial court as the opinion of this Court, and we affirm its judgment.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.

. Cleveland and his wife, Peggy Sue, are the sole owners of Tel-A-Cover Systems, Inc., and are its president and vice president, respectively.

. We note, in passing, that, because our holding essentially adopts this latter contention, the counterclaim, although still pending in the trial court, is effectively resolved- as to Cleveland.

. Specifically, Business Investment averred:
“5. ... that the defendants closed the following sales and derived the following revenue after termination:
"A. Magro Flower $ 6,000.00
"B. Namco $ 6,000.00
"C. Speedway $115,000.00
"6. Under the agreement, the defendants owed [Business Investment] $127,000.00 plus revenue from any other sales closed after September 18, 1986, and punitive damages for the violation of [Article] 9.”